Good morning, Your Honors. My name is Jeff Hedger. I represent the Burlington Northern Santa Fe in Montana. On October 31st, 1999, as you know from the briefs, a large prairie fire rolled across the prairie near Wolf Point, Montana, damaging nearly all, if not all, of the personal property owned by the Turners and the Oskowskis who lived next door. Shortly after the fire, the fire was investigated by many parties, including the railroad. At that time, the railroad retained two experts in the area of fire expertise, that is, in the origin and cause of fires. One of them was Mr. Don Howard from Idaho. Like all fire experts, Mr. Howard went to the scene, took photographs, looked at burn patterns, made measurements. It would have been so easy to bring somebody from the Abbott Laboratories or Armstrong Laboratories to come in and testify. Why didn't you? Yes, Your Honor, it would have been possible to do that. We did not because we believe we were entitled to rely on Rule 7 of 3. Wouldn't it cost you $25? Your Honor, it would have cost more than $25. And cost isn't really the issue for this defendant, but that does raise the question that basically we're here to talk about, and that is, Rule 7 of 3 says that an expert can rely upon data and other information, express opinions on that information, if they are in that field and they believe in it. This was an opinion matter. Your Honor, I've been thinking about that and have been ever since this ruling. And is the finding of a chemical in dirt, is that an opinion or is that a fact? It may be either way. But in any event, under Rule 7 of 3, an expert who reasonably relies upon that type of data in his field should be entitled to express opinions based thereon. And quite frankly, Your Honor, the rules, Rule 7 of 3 and others, give litigants the roadmap for how they're supposed to handle these cases. You've tried hundreds of these cases. I've tried about 50 of them. And I still can't understand why you didn't call the laboratory then. Well, Your Honor, again, a reliance on the rules, a reliance on the case law. You took a gamble. You took a gamble. Your Honor, you don't take gambles when you're engaged in litigation, when it's so readily available to you. Well, Your Honor, in hindsight, I guess if you want to call it a gamble, I don't know if I agree with that characterization, sir, but if you just apply the rules and you take this situation outside the context of just this case, I'm concerned about what this means for other cases. For example, if we have a medical case, do I have to endorse the phlebotomist as an expert to come in and say, well, here's what I did and here's the tapes, or can't the doctor rely on the findings of the blood test? Well, let me ask you a question about that. In some cases, courts hold hearings under Rule 703 or more extensive proceedings about what an expert in a particular field normally relies upon, because Rule 703 doesn't let the expert rely on inadmissible data unless it's of a type ordinarily relied on. That's true. In this case, as I understand it, it was in May of 2000 that the plaintiffs were given the Armstrong Lab report. And it looks to me like it was just much later that a motion to eliminate was made. So, I mean, frankly, it looks to me like both sides were a little lax in not getting this issue framed up before the court, and the court was maybe a little lax in not setting up the right kind of procedure so the jury could get all the evidence without prejudice. Your Honor, if I might correct one statement, the actual Armstrong Laboratory report was produced in the pre-discovery disclosure phase with the original report from Mr. Howard. So they actually had the report long before that. They raised the issue as a motion. The issue they raised was they moved for the exclusion of Mr. Howard on the grounds that his opinions were inadequately disclosed. The court ultimately ruled against them on that point, saying that Mr. Howard's disclosures pursuant to Rule 26 were appropriate. But the court reserved until time of trial the analysis of Rule 703. Did Howard give an opinion that it was his opinion that the fire had been started with some gasoline or something, and as a basis for that he was relying on the Armstrong report? That's correct. His opinion was that the fire was not started by a train, but that based upon burn patterns, et cetera, and the fact of the lab sample. And when were the plaintiffs given the information that Howard was relying on the Armstrong lab report for the proposition that there was gasoline in the soil? Again, Your Honor, that was in the pre-discovery disclosure phase long before even the expert disclosure deadlines. It was like right off the bat. Right off the bat, right out of the chute. And they didn't ask the court for an order at that time saying that the lab couldn't be relied upon? That's correct, Your Honor. And neither they nor you sought to take a deposition of the lab? No, Your Honor. Furthermore, when it came up before trial at the last minute, as I understood it, the railroad said, well, we can't have the lab here today, but we could get them here. And the judge said, sorry, you made your choice. Too bad you're out. Isn't that about it? Yes, Your Honor. If that was the defect, I would have offered up Mr. Armstrong to come in simply to say, I'm a lab technician. I ran the dirt through the machine. When was this? I read a transcript. I wasn't clear when it was compared to the trial. It was a transcript of a hearing before the judge on this issue? That was in May of 2001. The issue, again, being the plaintiff's claim that Mr. Howard's opinions were not properly disclosed under Rule 26. It was then at the – just at the time of trial that the 703 analysis was undertaken. When was that? Compared to when? I'm sorry. That was December of – excuse me, November of 2001. And when was the trial set to start? November 2001. And in the middle of the trial? In the middle of the trial, the – The hearing on 703? Right at the pretrial conference. And then the offers of proof to give the information to the judge to make his final determination on 703 were in the middle of trial, yes. And so the judge didn't raise it like at the start of the trial did he? In other words, it wasn't – you weren't told at the start of the trial, you better have Armstrong here. No, I was not. You were told – how far into the trial was it? My recollection is about the third day, second or third day. How long was this trial going to be total? Five, six days. About a week? Oh, yeah. One day over a week, I remember that. So did anyone on either side ask for – either the plaintiff asked for a continuance so they could get their own expert to contradict the Armstrong report, or you asked for time to get that witness there? No, we did not ask for time during the middle of trial, neither the plaintiff nor the defendant. The plaintiff, however, indicated that it had an expert available to talk about, to criticize the lab findings, and that was prior to trial, Your Honor. Well, it seemed to me one thing that was – and I don't want to monopolize your time, but I was very troubled by this case and this issue under 703 on both sides a little bit. And it seemed to me what was bothering the judge was that, although an expert can rely on something that's not admissible, it's customarily relied on, it seemed like the way the district court viewed it, here the expert was not given his own opinion and relying on the Armstrong lab report. He was just kind of adopting the Armstrong lab opinion, and the court thought that was prejudicial or unfair. That's true, Your Honor. That is what was troubling the district judge. And my concern with that is, if you read the case law and the commentary, Professor Mueller and Professor McCormick, for example, it's the kind of thing that's customarily done by fire experts. They may not have the independent knowledge or ability to run the dirt through the machine, which is not unlike, for example, a doctor who does not have the independent knowledge or ability to run the MRI machine, but they routinely rely upon that. And if a plaintiff is permitted to at the last minute come in and say, you know, right before trial and say, hey, you didn't endorse the lab technician. You didn't endorse the phlebotomist. You didn't endorse the guy who went out with the little machine and took the air samples. Therefore, your industrial hygienist, your doctor, your fire expert can't testify. Why don't you argue the case involved in doctors? Why don't you argue the case involved in railroads? And that's this case. And the whole case depends upon whether or not there was gasoline in that fire, whether the fire was started by gasoline. Now, you sent all the evidence you had to a laboratory to make that determination. Why in the world didn't you call the laboratory? You know, maybe, maybe you didn't trust him. No, Your Honor. We trusted him because Mr. Armstrong. I don't know why you didn't call him. You say we didn't have to call him. Again, in your lawsuit, you know, you call him again, Your Honor. If you read the case law and the commentary that I've cited to you in our briefs, fire experts are entitled to routinely rely upon the data of a lab technician. There may have been there may have been faulty testing by the laboratory. And nothing in the world says that you cannot challenge that unless the evidence is admitted. That's that's true, Your Honor. I guess the way I would respond only admitted by the person who conducted the test. The way I would respond to that, Your Honor, is that could be the case almost in any case. There's nothing to say that the blood test wasn't done in a faulty way. Nothing to say that any lab data was not done in a faulty way. I think Rule 703 recognizes that as a practical matter, it relieves litigants of the need to go through the time and expense of authenticating everything if those materials are of a type reasonably relied upon by experts in that field. And so, again, I think we were entitled to rely upon Rule 703. It wasn't challenged by the plaintiffs until the absolute last minute at a time when this defect, if it were a defect, couldn't. Trials are a test to ascertain the truth. And when you don't have the you don't have the laboratory in the courtroom to determine the truth of whether or not there was gasoline in that fire, then the whole system breaks down, counsel. We don't know what the truth is. Well, again, Your Honor, the evidence would have been admitted as it has been in cases in this Court, the Paddock case, for example. The evidence would have been admitted solely to illustrate the expert's opinion. It would not have come in necessarily in and of itself. It would still be inadmissible hearsay. But it could be and was relied upon by the expert. So, again, I think this is something that's routinely and commonly done in plenty of cases. You do not bring in the I hate to keep going back to the medical examples, but they're the easiest. You don't bring in the phlebotomist to say, here's how I determined that there was this substance in the person's blood. You bring in the doctor to say, I relied upon the blood test, and it might conclude that, you know, my opinion is this person has, you know, this medical condition and you caused it, defendant. So, again, given given the case law, I don't think what happened here was all that unusual. If there are any other questions on that issue. I just was going to ask you whether you've cited a number of cases in your brief where experts relied on some kind of report like this and were permitted to testify. Yes. Even though the report itself wasn't shown to be admissible. Are any of those cases, you know, are they on point or are they distinguishable is the question I have. And I'll study them a little later. I mean, here, if, for example, if your expert had said, well, I looked at the ground and I sort of suspected there was gasoline in it or I had some other reason I thought there was arson. And, you know, I checked out a number of alternatives. One of them was to send this to this lab. And I've got five reasons for concluding there was arson. And one of them is the lab. I don't think there'd be any question that. Well, I think I think that would come in under Rule 703. But the question is, if the expert says I sent it to the lab and that's the only reason I've got is what the lab said. And customarily, I rely on these things. Are the cases that you've got, do they fit that situation? Yes, they do, Your Honor. And the situation is different. Howard's opinion found at ER 73 through 78 indicates a number of bases for his opinion, one of which is the lab result. But he talks about the deep burn patterns. He talks about the fact that the the the fire appears to come from this debris pile that's on the railroad right away. The burn pattern indicating it's going back toward the railroad tracks. So it's one fact that he relied upon. I'm not sure it wasn't going to stop him from saying he thought there was arson, but he wouldn't let him refer to the report saying there was gasoline in the soil. He would not. No. The other issue raised on a few very briefly, Your Honor, is whether or not the plaintiff's Oskowski's and the plaintiff, Mr. Howard Turner, presented sufficient evidence for the jury to determine that they had suffered emotional distress as a result of this fire. On a personal level, I'll grant to you that the loss of your personal property is distressing. The question, though, is under the case law in Montana, under Maloney, is that the type of extreme distress that no reasonable person should be expected to bear. And again, our concern in this case is is every casualty loss, every property damage loss is a defendant subject to a claim for unlimited damages for emotional distress, particularly in the case of the Oskowski's where they weren't present at the time of the destruction of their home. They did return to see that their home was destroyed. Mrs. Oskowski testified that she was devastated, that she cried, all of the things that you would expect. But does that arise to the level of extreme emotional distress that no person should be expected to bear? Mr. Turner, quite frankly, didn't testify as to any emotional distress. He's a stoic man. He simply said on the witness stand that he lost his house and he felt bad about that. But beyond that, there was no suggestion it was extreme emotional distress. None of these people sought any medical treatment, gave any outward indicia of extreme emotional distress other than saying I've lost my property and I'm devastated by that. I will grant you that normally a jury is in the best position to make these determinations, but I've cited to you cases where courts have taken that away from the jury. And I believe that this that the judge abused his discretion here in not taking it away from the jury. Thank you. Good morning. My name is Curt Jackson. I represent the Oskowskis and the Turners in this fire case. I think we need to put the fire in factual context. This happened in October in Montana. And the testimony, the undisputed testimony was that the weeds and grass on the right of way were two or three feet high. And it was very, very dry. Montana law, Montana statute provides that the railroad is required to keep its right of way free of all combustible materials. And they didn't do that. This was a very dry year and we had this high grass at the point of origin. We had five people testify that there was no fire. And then a westbound train went by and then immediately there's fire. And we had this raging fire that goes across the prairie, pushed by winds of 60 miles an hour and completely and totally destroys these people's property. They didn't have a toothbrush left. Everything was burned up. We have. How far away? Between the point of origin and the property, about a mile, maybe a mile and a quarter. Mr. Jackson, I don't doubt that you have good evidence that a train started the fire. And maybe you have the better of it and should win your case with a jury. But I'm really troubled that it looks like the railroad wasn't able to put in the defense with its expert that on his investigation, he thought there was arson. And one of the grounds was this was this report that he sent away from on the soil. And what I'm having trouble seeing is why that isn't something an expert can rely on. Was there any hearing about what an expert, what a fire reconstruction expert can customarily rely on? I saw the hearing before the judge and some argument, but it seems to be focused more on the fact of prejudice under Rule 703 than on the reasonable reliance of what an expert can rely on. Let me say that the reasonable reliance issue is a red herring. And here's why I want to say that. It seems that everybody's ignoring the fact that in the year 2000, the Rule 703 was amended. That took effect December 1st in the year 2000. That added the last portion. I understand that. That's like a second issue. So are you saying that the plaintiffs don't really contest the first issue? I mean, basically, the Railroad has to show first that the evidence that's inadmissible is of a type, you know, reasonably relied upon by experts in this field. And if they get past that hurdle, then the judge still has to consider whether the probative value outweighs prejudice of letting the inadmissible evidence be mentioned. Excuse me. I think the district court can be affirmed on the basis that there was no reasonable reliance in this case based upon the offer of proof that the Railroad made and what the district court found from all the briefs that were submitted. Procedurally, the Railroad had every, every opportunity to make its case before this district judge. Yeah, but reasonable reliance, the test under Rule 703 isn't kind of a general thing like could you have called a different witness. It's just whether experts in that field customarily rely on that type of data. Here's why I think the district court can be affirmed on the basis that there's no reasonable reliance here. And I think Judge Ferguson mentioned it and maybe even Judge Gould mentioned it yourself, is that this was the district court found that this laboratory finding. And I'll call it a finding because it's not even evidence. It's it's rank hearsay. But that finding was the sine qua non of this man's opinion. He didn't have any other basis for his opinion. That was it. He went out there with a with a hydrocarbon sniffer and he passed that sniffer around this alleged debris pile and he didn't find any indication of of an accelerant. None. He dug up five samples, put them in paint cans, sent them to this laboratory. But the reason he did it was to find out what sort of material it was. He he did not even suspect that there was an accelerant. And the reason why is because of all the information that these investigators had about how this fire started. We had five people see it start because of a train. We have a 9 1 1 emergency report to the 9 1 1 office saying. And that was the first report of the fire. This is Dennis Tolan. There's a fire out here. It looks like it was started by a train. Well, what does it matter what he suspected? I mean, the question is not what he suspected when he sent the soil in. But but whether a fire reconstruction expert can reasonably rely on a lab report. I mean, let's say let's say he called an electrician and said, I want you to check all the signals to see if there could have been sparks. And I'm sending the soil to this lab. I want them to check that for anything unusual. And I'm calling the observatory to make sure that no comet, no meteor hit Montana that night. I'm just checking out a whole bunch of things that can start fires. And now he gets a bunch of reports. Why can't he rely on one that says, bingo, you found something. 703 contemplates that an expert can rely on hearsay information to support his opinion. Now, 703. And let's say for purposes of argument that this man, this Mr. Howard, reasonably relied on that lab report. OK. That does not say that that lab report, that finding can be told to the jury. No. Then you have to look at the last sentence. Yes. Of 703, which is like rule 403. It says it's similar. It says, you know, it says you don't consider it. It doesn't go to the jury unless the probative value outweighs the prejudice. Well, you do look at the second part of 703. But I tend to disagree that it's exactly like four. I didn't say exactly like that. It's a balancing thing. But yes, except that it sets up a presumption that it doesn't go to the jury. Correct. I understand that completely. But still, I mean, here in terms of probative value, it's hard to think of something with more probative value than gasoline and in the soil. I don't understand why the railroad couldn't be permitted to present their defense on that ground fully. And and you had the report early on. So the plaintiffs could have called a different witness if they wanted. Well, this would have deposed the Armstrong lab, too. This was the railroad's theory. This was their burden to produce and marshal the evidence that substantiated, frankly, a very suspect finding of of any sort of accelerant in that in that pile. Now, the lab report comes back and says this is a material consistent, quote, consistent with gasoline. Now, what does that mean? Now, this was the railroad's burden to, first of all, identify an expert who could testify and provide the scientific and evidentiary basis for that finding. They didn't do it. The district court said, could you have listed and identified and disclosed an expert on the expert disclosure deadline, which was long before this even got to trial? The railroad didn't disclose anybody from the laboratory to come in and testify. Now, on this balancing test, there's an article. And the reason I'm referring to an article, I look for cases on this new amendment to seven. I understand. I'm pretty familiar with that rule. And I know the amendments. OK. It's a reverse. I was in a council in a fair number of lawsuits where lawyers argued about, you know, what their experts could bring in. So I'd like to see the article, actually. OK. Actually, it's a fight to it is all I mean. OK. It's it's by Gregory P. Joseph. It's called the 2000 amendments to the federal rules of civil procedure and evidence of preliminary analysis. Mr. Joseph was a member of the U.S. Judicial Conference Advisory Committee on the federal rules of evidence who promulgated the amendment. He states that the amendment number one presumptively precludes disclosure of the inadmissible data to the jury. So you're right. There is a presumption against disclosure on this balancing test. Your Honor, he says the balancing test contained in Rule 703 is just the opposite of the normal balancing test in Rule 403. Instead of allowing the evidence, unless it's prejudicial effect substantially outweighs its probative value, which is under 403. In other words, under 403, you start with the presumption that it's probative and then you look to the prejudice to see if the prejudice overcomes the probative. Under 703, the balancing test Rule 703 bars introduction unless the probative value substantially outweighs the prejudicial effect. So you start with prejudice and then it's the burden of the proponent to prove the probative value. Well, here the district court ruled the railroad hadn't done that. And one of the reasons one of the big reasons was because this lab report was ranked, hearsay, but there was absolutely no support for the technical or evidentiary or scientific value or accuracy of that report. And I submit it's it's no coincidence that Rule 702 of the Federal Rules of Evidence was amended contemporaneously with 703. Because I think under in undertaking this balancing test under Rule 703, the district court has to be mindful of its gatekeeper role under 702. In other words, the expert can rely on the hearsay for his opinion, but you can't tell the jury you can't disclose that hearsay to the jury, especially in this case where there's no scientific basis for that finding. OK, so how would that that's helpful? And could I just ask that you give the citation to the clerk over here at the close of the argument that the panel can have that on a form? Yes, sir. All the panel. Now, how does that work at trial? Let's say the expert says, in my opinion, there was likely arson. And what do you base that on? He says, well, I base it on my view of the premises, this, that and the other thing. And but he's not allowed to say and a report of Armstrong laughs. Right. Correct. So what does he say? He just says and other reports I've gotten or just says I base it on my full investigation. Yeah. And in the there's articles, too. In fact, the next portion of this article, Mr. Joseph's article talks about that very thing. Now, unfortunately, in this case, we don't know because the railroad never called Mr. Howard. The district court made it perfectly clear, abundantly clear, saying, look, I'm not precluding you from calling Mr. Howard as a witness. The only thing I'm doing is precluding you from mentioning this hearsay unscientifically. Who knows? Finding out consistency with gasoline from the jury. That's all he did. Well, the railroad. It's unscientific or not. But the judge said that he could testify, but he just couldn't refer to this report. Correct. So we don't know how it would have played out at trial. What about what about calling Armstrong? I saw one place in this transcript where Mr. Hedger, I guess he's a railroad lawyer. Mr. Hedger right here. Mr. Hedger says he says, I think we could bring Andy Armstrong, but we don't have him today. So is was there the ability to bring him the next day? Your Honor, under Rule 26, the district court set a deadline for simultaneous disclosure of experts, along with all their disclosures that are required under Rule 26. And that was that deadline was, I believe. Don't hold me to this, but I think it was in January of the previous. This trial occurred in November of 2001. The expert disclosure deadline was January. Now, the railroad had from January to trial to. Well, first of all, they didn't do it in January. They didn't disclose anybody from Armstrong Laboratories as an expert. And then they didn't do anything at all, even though. And I've got a list of the procedural motions that were presented to the district court on this very issue. The first one was in May of 2001, where we made a motion in limine saying Mr. Howard should not be able to talk about this finding because it's ranked hearsay. There's no scientific basis for or anything. From May until the trial, the railroad did absolutely nothing to ask the district court. Well, OK, if that's the problem here, then please give us additional time or waive the deadline for for disclosing experts and let us call in. And so that gives a plaintiff time to take his deposition, all that. They never did that. They never asked the district court for leave. To add anybody from Armstrong Laboratories as an expert. When did you file your motion again, please? It was in May of 2001. And the district court also set a deadline for all motions in limine. And we made. And by the way, Mr. Howard's deposition was taken, I think, in February of 2001. And we made our motion in limine in accordance with the court's deadline. Consistent with the court's deadline saying they shouldn't be able to talk about this because they don't have a witness. Well, the railroad never, ever once tried to get an Armstrong Laboratory witness to the district court until in the middle of trial. Then they said, well, maybe we can bring him now. They had everybody out of there the next day. I'm sorry. I had no I had no opportunity to to depose him or any of that. Your Honor, that was the district court's expert disclosure deadline was for that precise purpose. And they failed to do it timely and substantively. And it was totally prejudicial to our case. And again, the district court made a very careful, very concise, very precise ruling here. The only thing he said is that, Mr. Howard, you can testify as to your opinion, but you can't mention that laboratory alleged finding. So I want to say one thing about standard of review. Under 403, the standard of review of a district court's decision is wide latitude and great discretion. Here, since we have the reverse of 403, it seems to me the standard of review for a district court's decision ought to be even greater deference. If the district court found that the probative value didn't outweigh prejudice, we should give that deference. If the district court found that under the last sentence of 703, that the probative value of the Armstrong Lab report did not outweigh the prejudice to the Turners, then we have to give that some deference. Well, under 403, it's given wide latitude and great deference. So we don't have, are there really virtually no cases yet interpreting that last sentence of 703? As far as I could find, there are not, Your Honor. I will tell you that the cases that I did find, if I can find it, one is from the Second Circuit and it's United States versus Duka. Jeannie, I don't know. I pronounce that right. It's three twenty six. F third. Forty five. Second Circuit decided March 11th, 2003. And that case didn't really deal substantively with 703. What it what the issue was, whether or not the amendments to rule 703 were going to be applied retroactively. And the court refused to apply the amendment retroactively because the jury verdict was in January of 2000. And the the amendment didn't go into effect until December 2000. But this is what they said. When an amendment such as the amendment to rule 703 overrules prior circuit precedent. This court generally does not apply the amendment retroactively. So it was kind of Victor. But what this court was saying was that the amendment to rule 703 overruled prior Second Circuit precedent, which would allow an expert to talk about. I see. Well, I think you're saying I can understand how it seems to me that the court and parties on both sides had a little off track on this in the sense that. It's a very important evidence didn't get considered by the jury and the witness wasn't deposed and you didn't have a counter witness. And it ends up pretty unsatisfactory in my mind. But with it being a new rule, I can understand how everybody's diligent and it just ended up where it ended up. I don't know if we can improve on what Montana's done here. We'll have to study it. I think if you're looking at whether or not the district court abuses discretion, I'm certainly sure you'll find it did not because of all the factors and and taking into account that under rule 702, there's just absolutely no basis for this. This finding. So the jury should never have gotten to hear it, even though their expert could have still testified on the mental distress issue. The railroad never go to that. Howard, did they make an offer of proof through this, Howard? Yes, sir. And he testified to offer proof that he was relying upon the laboratory exam. He said that he traditionally does. But he he didn't send it to the laboratory for the purpose of finding gasoline. He sent it to the laboratory to find out what sort of sort of material it was. And lo and behold, the laboratory sends back and says one sample out of five contains something consistent with gasoline. Now, I don't know that the jury should be able to hear that when there's no testimony or foundation for the basis of the finding itself. I see my time is up. We can give you a little extra and add a little. OK, thank you. On the emotional distress, we have a case in Montana right on point that the Maloney case, that emotional distress damages are recoverable for for property loss and not being there or none of that isn't is an element of that cause of action. The Montana Supreme Court said in Maloney, aside from in cases involving a strictly pecuniary interest in real estate, it is well settled in our case law in point of fact that emotional distress damages may result from negligence or intentional damage to property arising from interference with the use and enjoyment of land. And here that happened in states on Mr. Turner's claim, as we point out in the brief, the railroad's not in any position procedurally to challenge the the the sufficiency of the evidence for that. The jury's verdict there because they didn't make a motion for a directed verdict. They didn't make a motion for judgment as a matter of law. They didn't make a motion for a new trial. They're trying to use Rule fifty nine e motion to amend or alter the judgment to challenge the sufficiency of the evidence which they didn't do prior to trial or during trial. And under those circumstances, we don't think that the court has the power to overturn the jury verdict. And I take you back, please, to Judge Lay's inquiry about offer of proof. Yes, sir. I'm looking at a something called excerpt of record at page twenty eight. And I see a question from your colleague, Mr. Hatcher, after the judges made some ruling, says just a housekeeping procedure court. Sure, I feel. And he says, I feel we we ought to make some kind of offer of proof. Seems to me the easiest way to do that would be through Mr. Howard. Take a little break. I'll take five minutes. I won't read it all. But then the court goes on and says, well, isn't the Armstrong lab report itself a sufficient offer of proof? And then Mr. Hatcher says, I would think so. And the court says, why don't you mark that if it's not already in the record and let that stand for purpose of appeal? So you say no objection. And I guess that was done. And when I read this, I was a little concerned or troubled by it because it didn't I wasn't clear to me that the offer of proof included the reason that that Mr. Howard relied on this. Experts normally would. In other words, I would have thought he would testify, get permitted to testify. I would say such and such in background. And it looked like the court may have talked Mr. Hatcher out of that. No, there was there another session that I'm not aware of. Well, there's another session. And it's in the railroad's excerpts of record later on in the transcript where Mr. Howard did come into chambers and made an offer of proof. So there's a record. Yes, sir. OK, great. Thanks. I appreciate that. Thank you. Just to clarify your question, Your Honor, there was a later session after several requests. It's found that ER one twenty three through one twenty seven or in the transcript at pages nine ninety nine through a thousand three. And it was testimony from Mr. Howard. And he was asked the questions, well, how do you do your work as a fire expert? What do you rely on? What do you customarily rely upon? And he indicated that he did rely on lab data and that he had relied on the lab data from Armstrong Labs itself in many cases. So I think we met our burden under seven of three with respect to the article that was just read to you. That that's the first that we've heard of that. That wasn't cited to us. Well, I asked for it and it'll be we'll take it as a supplemental citation. But if you want to cite something in response to it, we'll hold off doing anything. I'm sure for we can hold off for a week. OK. If you want to submit a supplemental site, feel free to do that. I'll take a look at that. I don't want to burden you with that, but not a brief probably just a citation. I understand. It's a difficult problem with a new rule and appreciate both of your arguments on it. Thank you. OK. If nothing else, the case shall be submitted. We thank counsel for their arguments on this intriguing change to 703.
judges: Lay (8th Cir.), Ferguson, Gould